UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD PRICE,

                  Petitioner,                Case No. 5:16-cv-13187
                                                       Hon. John Corbett O'Meara

v.

STEVEN RIVARD,

                  Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Reginald Price was convicted after he pled guilty in the Wayne Circuit Court to one count of second degree murder, MICH. COMP. LAWS § 750.317. Petitioner was sentenced to 32½ to 60 years imprisonment. The petition raises a single claim: Petitioner's plea was involuntarily entered when he expressed confusion at the plea hearing and his trial attorney told him he would receive life in prison if he stood trial. The Court finds that Petitioner's claim is without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

I. Background

Petitioner was charged with first-degree murder in connection with the beating death of Kimani Hicks. The incident was recorded on a gas station's surveillance video system, and it showed Petitioner beating the victim in the head with a baseball bat in the parking lot.

At Petitioner's preliminary examination, Hakima Hicks testified that she was Kimani's sister.

On May 9, 2012, after receiving a call that her brother was hurt, she went to a gas station in Detroit. When she arrived she saw her brother being loaded into an ambulance. She visited him for the three days he was at the hospital until his death, but Kimani was never able to communicate with her. Dkt. 9-2, at 6-8.

The attendant at the gas station, Sattir Al-Mayali, testified he was working on the date of the incident. Id., at 10. Earlier in the day he saw Petitioner holding a baseball bat, and he was angry. Id., at 10-11. Al-Mayali identified Petitioner as the person holding the bat in the videotape taken from the store's surveillance camera. Id., at 11-12.

Detroit Police Officer Barron Townsend testified that on the evening in question he was called to a gas station on a reported assault and battery. Id., at 13-14. He found the victim lying in the parking lot. Id., at 15. He was bleeding profusely from the back of his head. Id. The victim was alive, but he was unable to communicate. Id., at 16.

Detroit Police Officer Brandon Smith testified that he worked for the homicide section. Id., at 18. He interviewed Petitioner on May 23, 2012. Id. Petitioner was advised of his rights prior to the interview, and Petitioner waived them and agreed to make a statement. Id., at 18-19. Petitioner described the incident as follows:

> I was inside the gas station and I saw Kato through the window. I went outside to confront him about stealing my bike from me and pulling a gun on me at Palmer Park. I told him what he and Cash did to me was wrong. I said give me my $15 back. He told me to go on somewhere before I get shot in the head. It's going to be later tonight or tomorrow.
>
> Then he put his fist up to fight me. That's when I hit him the first time. He fell down then I kept hitting him in his head. I walked away to Six Mile and Third and dropped the bat.
>
> Then I walked up to Urban Cutts at Six Mile and Second and sat outside the shop. The police in a blue and white car stopped me and talked to me. I told them I got into a fight. They wrote down my name and let me go.

2

Id., at 21-22.

Petitioner claimed that the victim had a gun on his hip when the incident occurred. Id., at 22. No weapon was found on the victim's body, however. Id., at 28. Petitioner explained that the victim pulled a gun on him previously, and during the incident "I must have had a flashback of him pulling the gun." Id., at 23. Petitioner said that he was not trying to kill the victim, and he "should have just hit him in the legs." Id. Petitioner identified himself in the videotape assaulting the victim in the parking lot. Id.

The video showed Petitioner hitting the victim in the head with the bat. Id., at 23-24. As described by the prosecutor: "there were first two blows which knocked the decedent to the ground. The defendant then took the bat way over his head and came down on the decedent. Then stepped around the decedent, hit him two more times, then stepped away and came back and hit him one additional time. Id., at 28-29. The state district court bound Petitioner over for trial in the circuit court on the charge of first-degree murder. Id., at 30.

The day before trial was scheduled to begin, a plea bargain was struck whereby Petitioner agreed to plead guilty to the lesser charge of second-degree murder with a sentencing agreement of 32½ to 60 years, and in exchange the prosecutor dismissed the first-degree murder charge. Dkt. 9-3, at 2. Petitioner was place under oath, and he indicated his desire to accept the plea bargain. Id., at 3. Petitioner was advised that he was charged with first-degree murder which carried a mandatory life term. Id., at 4. Petitioner was then advised of, and agreed to waive, all of his trial rights. Id., at 4-5. Petitioner indicated that he was entering his guilty plea of his own free will. Id., at 5.

When asked for a factual basis for the crime, Petitioner initially stated that he threw a bottle at the victim, killing him, and he denied hitting him with the baseball bat. Id., at 7. The Court immediately indicated that it would not accept the plea, whereupon defense counsel stated to

Petitioner, "You know there's a baseball bat in the video that they're going to play. . . . what do you want me to do?" Id. The Court also asked Petitioner how he wished to proceed, and Petitioner indicated, "I'll plead guilty to it." Id., at 7-9.

        Petitioner then testified to the following factual basis:

        Court: Did you hit him with a baseball bat?

        Petitioner: (No response)

        Court: Yes or no?

        Petitioner: Yes.

        Court: And as a result of you hitting him with the baseball bat, to his head, he died, is that correct?

        Petitioner: Yes.

        Court: And you hit him more than one time?

        Petitioner: No, I'm not sure about that.

        Court: But you did hit him with the baseball--

        Petitioner: (Interposing) Yes.

        Court: (Continuing) --bat in the head?

        Petitioner: Yes.

        Court: All right. And as a result of you hitting him--

        Petitioner: (Interposing) I--

        Court: (Interposing) Just listen. Was it your intent to kill him?

        Petitioner: No, ma'am.

        Court: But was it your intent to commit great bodily harm less than - I mean to - was it your intent to commit great bodily harm less than the crime of murder?

        Petitioner: Yes.

Court: And he died as a result of that, is that correct?

Petitioner: Yes.

Dkt. 9-3, at 8-9.

The Court then accepted the plea, and it found that Petitioner entered it "knowingly, voluntarily, understandingly, and intelligently." Id., at 9.

At the sentencing hearing, defense counsel indicated that Petitioner had a long history of mental illness, and has issues with drugs and alcohol. Dkt. 9-4, at 2-3. Counsel requested that Petitioner receive treatment in prison. Id.

When given the opportunity for allocution, Petitioner read a letter into the record complaining about his defense counsel:

> Your Honor, I understand my circumstances and the nature of my crime. What I don't understand is how my case was, and has been handled, and this legal system in this court.
>
> I've been here two years fighting my case, which you know I can't win. My first lawyer didn't defend for me, at all. I didn't even get my discovery packet until nine months later, asking me to take an unreasonable *Cobb* without a defense. He said to me: 'You can put people on the stand, and they're still going to say that you did it," which means that - ineffective counsel.
>
> I wrote the Attorney Grievance Commission. They said it was not, there's nothing they can do. So, I asked you to remove him. And you said you wouldn't, at all, and said he was - that he came on a Sunday to see me, and that he's a very good attorney.
>
> Then you give me this lawyer that is now better. She told me, the first time I made - met her - met her, to take the *Cobb*. Good time will come back in ten years. If you don't take it, they'll give you all day. I'm just sayin' the Judge will keep you in the bullpen with a monitor speaker box.
>
> You call her a lawyer. No one should say that to a client. Ineffective counsel.
>
> I asked her and you for my preliminary exam transcript, and pictures, which is very important for me to have. Tells me I'm not entitled to have them. That's

5

ineffective counsel.

> I showed you the letter that I sent to my lawyer that was returned to me. The address was unknown, on a yellow sticker at the bottom. I showed you her card, with a letter matching the same address. You asked her: "Is this your card, your address?" She says yes. And then you give her the card and the letter, and she says: "Oh, no, I moved to a different building."
>
> You - all you said was to make sure you give him your new card. She never did.
>
> And I asked her while leaving the courtroom: "Can I get my letter and card back?" I never got that back, either. That should have shown ineffective counsel, to be removed, besides, from this case.
>
> Then - then my - then on my previous court date she says: "This is your final time to take the *Cobb*. You will lose, go to trial, and get life. I don't wanna' see you get all day, I'm just sayin."

Id., at 7-9.

The Court sentenced Petitioner under the terms of the plea agreement. Id., at 16.

Following sentencing, Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, which raised the following claim:

I. Whether this matter should be remanded to allow Defendant to withdraw his plea of guilty based upon a claim of innocence and that the plea was not understandingly made.

The Michigan Court of Appeals denied the application for leave to appeal "for lack of merit in the grounds presented." *People v. Price*, No. 327700, (Mich. Ct. App. Jul 10, 2015).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claim as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Price*, 873 N.W.2d 585 (Mich. 2016) (table).

II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

7

III. Analysis

Petitioner claims that his plea was involuntarily entered. He asserts that during the plea hearing he misstated facts, including making reference to killing the victim with a bottle. Petitioner indicates that he has a long history of mental illnesses including schizophrenia, and that his reference to the bottle at the plea hearing indicates that he may not have been competent to enter his plea. Petitioner notes that after he made the comment about the bottle, his counsel essentially coerced him into entering his plea by referencing the video tape of the crime, and she previously told him that he would get a life sentence if he went to trial.

The AEDPA deferential standard of review applies to this claim because the Michigan Court of Appeals rejected Petitioner's application for leave to appeal "for lack of merit in the grounds presented." This decision amounted to a decision on the merits. See *Werth v. Bell*, 692 F. 3d 486, 492-94 (6th Cir. 2012).

In order for a guilty plea to be constitutional it must be knowing, intelligent, voluntary, and done with sufficient awareness of the relevant circumstances and likely consequences. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). For a guilty plea to be voluntary, the defendant must be

> fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, [and not] induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970) (internal quotations and citation omitted). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397

U.S. at 749. Where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).

A plea-proceeding transcript which suggests that a guilty plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326-28 (6th Cir. 1993). Where the transcript shows that the guilty plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact and to the judgment itself. *Id*. at 326-27.

In this case, the record establishes that Petitioner voluntarily pled guilty to the reduced charge of second-degree murder. Petitioner was advised of the maximum penalty for the charged crime, and he was informed of the exact penalty he would receive on the reduced charge. The terms of the plea agreement were placed in simple terms on the record. Petitioner acknowledged on the record that he was pleading guilty of his own free will, and after initially minimizing his conduct, he testified under oath that he hit the victim with a baseball bat with the intent to commit great bodily harm, a mens rea sufficient for second-degree murder. See *People v. Aaron*, 409 Mich. 672, 728 (1980).

Petitioner asserts that his statements about hitting the victim with a bottle and his history of mental illness suggest that he was incompetent to enter his plea. The competency standard for pleading guilty is identical to the standard for standing trial. *Godinez v. Moran*, 509 U.S. 389, 398 (1993). Thus, if Petitioner is unable to "consult with his lawyer with a reasonable degree of rational understanding" or does not have a "rational as well as factual understanding of the proceedings against him," he is not competent to enter a guilty plea. *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotations omitted).

Petitioner made no evidentiary proffer in the state courts on direct appeal–and he makes none

here–that his mental illness rendered him incompetent to enter a plea. Rather, he provided the state court only with a conclusory and generalized allegation that he suffers from mental illness. "Not every manifestation of mental illness demonstrates incompetency." *Gurnsey v. Prelesnik*, No. 2:11-CV-15038, 2014 U.S. Dist. LEXIS 66771, at *4 (E.D. Mich. May 15, 2014). Likewise, mere allegations that a defendant was suffering from some form of mental impairment at the time of the plea hearing are insufficient to demonstrate involuntariness. See 2014 U.S. Dist. LEXIS 66771, at *5 ("Petitioner is not entitled to habeas relief on this claim because there was nothing in the plea transcript to indicate that due to mental illness, medications being taken by petitioner, or the head injury sustained in the accident, he lacked understanding of the proceedings.").

When the transcript of the plea hearing indicates that the defendant was in possession of his facilities and he has presented no affirmative evidence of incapacity, "after the fact" involuntariness or incompetency claims are rejected. See *id*. See also *United States v. Calvin*, 20 F. App'x 452, 453 (6th Cir. 2001) ("Calvin described with specificity the conduct underlying his guilty plea. Calvin was lucid and articulate at the plea hearing, and no evidence exists in the record that Calvin was not in possession of his faculties. Therefore, his 'after-the-fact' claim of incompetency must fail."); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 672 (E.D. Mich. 2002) (same). Nothing in the plea colloquy suggested that Petitioner was incompetent. It is true that Petitioner initially indicated during the plea hearing that he hit the victim with a bottle, but that passage reflects nothing more than the not infrequently seen reluctance by a defendant to admit that he committed a brutal act. When Petitioner was then confronted with the option of going to trial instead of entering his plea, he quickly indicated that he would go ahead with the plea, and his subsequent answers were responsive and appropriate.

In short, there is nothing in the plea hearing transcript which would indicate that Petitioner

10

was unable to understand the proceedings or communicate with his attorney. There was no indication in his words or actions that he was having difficulty understanding what was occurring or the implications of the plea agreement. Petitioner has made no proffer of evidence indicating that he was not in possession of his mental faculties during the plea hearing. Indeed, Petitioner's lengthy colloquy at the time of sentencing in which he complained about his attorneys' performance indicates that he was well-aware (if not dissatisfied) with the course of the proceedings in the trial court. It is worth noting that at the time of sentencing Petitioner prefaced his remarks by stating: "Your Honor, I understand my circumstances and the nature of my crime." Dkt. 9-4, at 7.

Petitioner also asserts that his counsel's statement during the plea hearing that the crime was caught on video tape, and her prior indication that he would receive life imprisonment if he did not accept the plea, rendered his plea involuntary. This type of persuasion, however, does not amount to coercion rendering a guilty plea invalid. Generally, a plea is valid if it "represents a voluntary and intelligent choice among alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The alleged pressure by Petitioner's attorney did not deprive Petitioner the ability to voluntarily chose between the courses of action open to him. Indeed, counsel flatly asked Petitioner what he wished to do. The hard facts for Petitioner were that he was faced with a charge of first-degree murder, a crime which carries a mandatory term of life imprisonment without possibility of parole. Moreover, the charge was supported by video-taped evidence showing him hitting the unconscious victim with a baseball bat in the head.

If counsel gave Petitioner her assessment that he would receive a life-sentence if he stood trial, that was a frank assessment of the likely consequences Petitioner faced. "[D]efense counsel's blunt rendering of an honest but negative assessment of [petitioner's] chances at trial, combined with advice to enter the plea," does not "constitute improper behavior or coercion that would suffice to

invalidate a plea." *United States v. Juncal*, 245 F.3d 166, 172 (2nd Cir. 2001); see also, *Holtgrieve v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001). Petitioner has not shown pressure to such an extent that his will was overborne or he was unable to rationally weight the options facing him. His counsel's conduct did not render his plea involuntary.

Accordingly, Petitioner has failed to demonstrate that the state court adjudication of his claim was contrary to, or resulted in a an unreasonable application of, clearly established federal law. The petition will therefore be denied.

IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists

of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claim is devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

SO ORDERED.

                                                      s/John Corbett O'Meara
                                                     United States District Judge

Date: April 11, 2017

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, April 11, 2017, using the ECF system and/or ordinary mail.

                                                     s/William Barkholz
                                                   Case Manager